[S. F. No. 9403. In Bank.—November 15, 1920.]

## In the Matter of the Estate of VALENTIN CHANQUET, Deceased.

[1] ESTATES OF DECEASED PERSONS—WILL—DISBURSEMENTS—CHARGE UPON TESTATOR'S STATUTORY PART OF COMMUNITY PROPERTY.— Where a testator, after expressing his intention that his wife should take absolutely her one-half of the community property, devised and bequeathed to her a life estate in the residuum of his property (which he declared to be his one-half of the community property) after payment and discharge of his debts, costs of last illness and burial, expenses of administration, and payment of certain legacies to others, his intention was thereby shown that such disbursements should be charged solely upon the one-half of the community property which was subject to his testamentary disposition.

APPEAL from a decree of distribution of the Superior Court of Alameda County. Joseph S. Koford, Judge. Reversed.

The facts are stated in the opinion of the court.

Charles A. Christin and Hutchinson, Van Fleet & Christin for Appellant.

Max W. Koenig and Herbert D. Wise for Respondent.

ANGELLOTTI, C. J.—This is an appeal by Sophie Chanquet, the widow of deceased, from the decree of distribution made in the matter of his estate.

The sole question presented is whether the superior court erred in charging debts, expenses of administration, expenses of last illness, etc., paid by the executor of the will, and certain legacies, against the estate generally (exclusive of certain specific bequests), including the widow's share in the community property, rather than against the husband's one-half of the community property only.

By his will deceased first gave to certain brothers his interest in the saloon and liquor store business, carried on by him and them in Oakland and San Francisco, declaring the same to be his separate property. He then gave a monthly allowance of thirty dollars to his mother for her life, and four general legacies aggregating $1,450. (The mother died before distribution.) Then followed the subdivision numbered "Thirteenth," in which he stated that there being some question as to what portion of the property, other than the saloon property, was community property, he thereby declared that all of his property, except his saloon property interests, is community property, and proceeded as follows: "And it is my will that my wife shall take her half of said community property (but not including my said partnership interests in the said saloon and liquor stores . . .) in lieu of all other interest in and to my property and estate, other than as I hereinafter provided for her, to wit:

"I hereby give, bequeath and devise unto my said wife, Sophie Chanquet, the use and enjoyment of a life estate in and to all residuum of my property and estate (my half of the community property), after paying and discharging all

my debts, the cost of my last illness and burial, the cost of administration of my estate, the payment of the specific legacies and bequests hereinbefore provided for, to be hers to enjoy and possess during the period of her natural life, and upon her death I hereby give, bequeath and devise residuum of my said estate, share and share alike, unto" certain brothers and sisters.

The executor had received in cash $30,689.47, constituting community assets, from which he had disbursed for debts, expenses of administration, last sickness, funeral expenses, etc., $10,889.63, leaving a balance in cash for distribution of $19,799.84. The superior court concluded that out of this general balance the legacies, aggregating $1,450, should be paid, leaving $18,349.84 in cash for distribution, together with other personal property and the real property on hand, one-half to go to the widow as her share of the community property, and the other half to the brothers and sisters of deceased, "subject to the use and enjoyment of a life estate therein and thereto to Sophie Chanquet," the widow.

The widow's claim here is that only a small part of the amount of expenditures by the executor and the legacies, aggregating $12,339.63, viz., $1,468.92, should have been deducted from the total community assets, and that the remainder, $10,870.71, for expenditures specified in the thirteenth subdivision, should have been deducted only from the husband's half of the community property, given to the brothers and sisters subject to a life estate in her. The result would be that she would receive absolutely as her one-half of the residue of money on hand $14,610.27, instead of $9,174.92, while the balance of cash for distribution to the brothers and sisters subject to a life estate in her would be only $3,739.56, instead of $9,174.92.

Appellant's claim is based on the language of subdivision thirteenth of the will as indicating the intention of the testator that the disbursements specified therein should be charged solely upon the one-half of the community property which was subject to his testamentary disposition (Civ. Code, sec. 1402), the part which for convenience we may here designate as the husband's half of the community property, and that the other half should go to the widow free from any deduction on account of any of such charges. Of course, if such intention is apparent on the face of the will

it should be given effect, the husband's half being fully sufficient to pay the same and leave a balance (Code Civ. Proc., sec. 1560).

[1] We are of opinion that appellant's claim as to the intention of the testator, as shown by the provision of his will, is well based. After making it clear that he desires his wife to take absolutely her half of the community property, he proceeds to deal with what he calls "all residuum of my property and estate," declaring such residuum to be "my half of the community property," and it is a life estate in this "residuum" that he gives, bequeaths, and devises to his wife "after paying and discharging all my debts, the cost of my last illness and burial, the cost of administration of my estate, the payment of the specific legacies and bequests hereinbefore provided for," with remainder over to his brothers and sisters. The words "after paying and discharging all my debts," etc., are such, located as they are, as to indicate, when taken in connection with what he had previously said about the wife's half of the community property, that it was the intention that such payment was to be made from the residuum with which he was then dealing. A most potent consideration in this behalf is to be found in the fact that included in the payments therein provided for are the legacies and bequests to others, which it cannot fairly be assumed were intended by the testator to be imposed in whole or in part upon the wife's half of the community property, over which the husband had no power of testamentary disposition, especially in view of the fact that the intention that the wife shall have her half of the community property is clearly and emphatically expressed. As to the legacies and bequests the intention must have been that the payments were to be made from his half of the community property. The provision for the payment of these legacies and bequests is the same as the provisions for the other specified payments, i. e., all such payments, including those of legacies and bequests, were to be made from the same source. This intended source, we think, must be held to be the "residuum" with which he was then dealing, viz., his half of the community property.

Of course, it is true that, in the absence of expression of contrary intent, the entire community property would be equally subject to "debts, the family allowance and expenses

of administration'' (Civ. Code, secs. 1402 and 1359). It is only as to the matters specified in subdivision thirteenth that any different intention is here expressed. We say this in view of the suggestion in respondent's brief that certain items of disbursement for family allowance and federal income tax are not included in the specification of subdivision thirteen of the will. This matter has not been argued in the briefs, and may properly be left for adjustment in the superior court when the matter of distribution is again taken up.

The decree of distribution is reversed and the matter remanded for proceedings not inconsistent with the views herein expressed.

Olney, J., Shaw, J., Wilbur, J., Sloane, J., Lawlor, J., and Lennon, J., concurred.