[Civ. No. 11284. First Appellate District, Division One.—May 8, 1940.]

In the Matter of the Estate of DIONISIOS MARINOS, Deceased. ANDREAS D. MARINOS et al., Appellants, v. KONSTANTINOS D. MARINOS, Executor, etc., Respondent.

William Farnum White, *in pro. per.,* for Appellants.

Theodore L. Breslauer for Respondent.

PETERS, P. J.—Andreas D. Marinos, a legatee and son of the decedent, and a partial assignee of Andreas, appeal from the decree of final distribution in the above-entitled

estate. The controversy between appellants and respondent (the executor of the estate) arises over the fact that all of the personal property in the estate was consumed in the payment of debts and expenses of administration. If the real property (all devised to the widow) is chargeable with a proportionate part of such debts and expenses, appellants will receive a portion of Andreas' legacy. By the decree appealed from no portion of the debts and expenses was charged against the realty, with the result that Andreas and his partial assignee received nothing.

The facts are as follows: By his will the decedent devised and bequeathed his entire estate as follows:

"*SECOND:* All my property, real and personal, of every kind and character, and wheresoever situated, is my own separate property.

"*THIRD:* My will is that all my just and lawful debts and funeral charges shall, by my executor hereinafter named, be paid out of my estate as soon after my decease as shall to my executor be convenient and that my said executor expend for my funeral the sum of Two Hundred ($200.00) Dollars, and no more.

"*FOURTH:* All the rest, residue and remainder of my estate and effects, of whatsoever nature and kind, and wheresoever situated, which at the time of my decease I may be possessed of or entitled to, and which is not hereinbefore disposed of, I give, devise, and bequeath as follows, to-wit:

"*1st:* To my beloved son Anastasios D. Marinos, now residing in the City and County of San Francisco, State of California, the sum of Ten ($10.00) Dollars, and no more, for the reason that I have already given him Thirteen Thousand ($13,000.00) Dollars, and my promissory note for Two Thousand ($2,000.00) Dollars.

"*2nd:* To my beloved son Andreas D. Marinos, now residing in the City of Athens, Republic of Greece, the sum of Four Thousand ($4,000.00) Dollars, and no more.

"*3rd:* To my beloved sons, Konstantinos D. Marinos and John D. Marinos, now both residing in the City and County of San Francisco, State of California, all the rest of my personal property (except the furniture of the house and as hereinafter mentioned in paragraph fourth (4th), to be divided between them share and share alike.

"*4th:* To my beloved wife, Stavroula D. Marinos, now residing in the City and County of San Francisco, State of California, all my real property, together with the furniture contained in my house, No. 22 Ringold Street, San Francisco, California.''

The estate, which was in fact community property of the testator and his wife, consisted of two parcels of real property, undivided third interests in two other parcels of real property, $291.16 in cash, and certain shares of stock. The stock was sold in the course of administration for $1450.34. During the course of administration the executor received $77.51 as dividends on the stock, and net income from the realty in the amount of $854.36. The gross value of the entire property, both real and personal, was a little over $23,400, of which one-half was awarded to the widow by virtue of her community property interest. Debts and expenses of administration, exclusive of executor's and attorney's fees, amounted to $1473.28, and to $3,124.36 including such fees. Upon the hearing of the account and petition for distribution the executor and attorney waived fees in excess of the amount of approximately $1200 cash then on hand, over and above debts and other expenses. The accounts of the executor showed that he had applied all of the personal property to the payment of the debts of the estate. Under the decree appealed from, all the remaining cash on hand ($1199.97) was applied to the payment of executor's and attorney's fees.

The major contention of appellants is that the real property should bear a proportionate part of the debts and expenses of administration, and that the widow should either be compelled to pay into the estate a sum representing this proportion, or that real property sufficient to pay this sum should be sold before distribution.

We agree with appellants that the real property should bear a proportion of the debts of the estate and expenses of administration. Under the provisions of section 750 of the Probate Code resort is had to the estate of a testator to pay debts and expenses of administration as follows: (1) To property designated by the will to be thus applied; (2) to property not disposed of by will; (3) to property given to residuary legatees and devisees; and (4) "thereafter all other property devised and bequeathed is liable for the same, in proportion to the value or amount of the several devises and legacies, but

specific devises and legacies are exempt from such liability if it appears to the court necessary to carry into effect the intention of the testator, and there is other sufficient estate.'' (See, also, sec. 753, Prob. Code.)

It is to be noted that the section makes no distinction between realty and personalty as to the order of application of the assets of an estate to the debts and expenses of administration. Applying the section to the will here involved, it is to be noted that the testator did not designate specific property to be applied to the payment of debts and expenses of administration, merely directing that debts should ''be paid out of my estate''. Nor does the will fail to dispose of any property. Its provisions are clearly all-inclusive so as to · include the entire estate of the testator. The holding of the trial court exonerating the real property cannot be sustained on the ground that the devise of all the real property to the wife is a specific devise, and therefore exempt from liability for debts and expenses under the last portion of section 750.

A devise or bequest of all real property or all personal property is not a specific devise or bequest, but is general. This matter was exhaustively considered and discussed in *Matter of Estate of Woodworth,* 31 Cal. 595, at pages 601 to 604, and pages 610 to 614. See, also, *Estate of Ratto,* 149 Cal. 552 [86 Pac. 1107], and *Estate of Painter,* 150 Cal. 498 [89 Pac. 98, 11 Ann. Cas. 760]. In 88 A. L. R. 553, there is an annotation entitled: ''Bequest or devise of all testator's personal property or real property as general or specific.'' At page 554 it is stated: ''The rule sanctioned, seemingly without dissent, by the cases, is that, in the absence of a clearly expressed intention of the testator to the contrary, a bequest of all of the testator's personal property, an aliquot portion of it, the remainder of the personal property, or any bequest in similar general terms, is a general and not a specific legacy.'' In reference to real property the . rule in United States, contrary to the rule that existed at common law, is stated as follows (p. 560): ''However, in the majority of cases decided in this country it is held that the question whether a testamentary gift of real estate is specific or general is to be governed by the same rule as where the subject of the gift is personal property; that is, that, in the absence of a clearly expressed intention of the testator to the contrary, a devise of real property in general terms, such as 'all' of the

testator's property, or the 'remainder' of the testator's property, will be held general, rather than specific.'' Various California cases are cited in support of this rule. Under these cases, the devise in subdivision 4th of Paragraph Fourth of the will, *supra,* devising ''all my real property'' to the wife must be held to be a general and not a specific devise. (See, also, 11 Cal. Jur. Ten-year Supp. 588.)

Respondent urges that under the will the $4,000 bequest to Andreas could be satisfied only from one-half the cash on hand at the testator's death—that is, from one-half of the $291.16, and that Andreas has no legal interest in the other personal property—the dividends and the stock. Apparently, it is the theory of the respondent that even if the real property should have been compelled to carry a portion of the burden of the debts and expenses of administration and was improperly exonerated therefrom, appellants are in no position to complain. It is contended that Konstantinos and John as the legatees of ''all the rest of my personal property'' except the furniture, are the only ones who could complain of the error, if one was made. This is on the theory that the legacy to Konstantinos and John was a bequest of the stock, and that the cash legacy to Andreas could be paid only from the cash on hand at the death of the testator. This presents a question of construction of the will. Section 751 of the Probate Code provides:

''The property of a testator, except as otherwise provided in this code, must be resorted to for the payment of legacies in the following order:

'' (1) The property which is expressly appropriated by the will therefor.

'' (2) Property not disposed of by the will.

'' (3) Property which is devised or bequeathed to a residuary legatee.''

It seems quite clear that the bequest of Konstantinos and John, considering its terms, and its position in the will immediately following the cash legacy of $4,000 to Andreas, reasonably means that the rest of the testator's personal property remaining after discharging the $4,000 bequest to appellant shall go to Konstantinos and John. To construe the will as providing that Andreas should get his $4,000 cash legacy only from cash on hand and that all other personal property was to go to Konstantinos and John even if there

were no cash, would be to entirely disregard the priority obviously intended for Andreas. It is our opinion that the will directed that personalty remaining after discharging the $4,000 cash legacy was to go to Konstantinos and John. Under this analysis of the terms of the will the proceeds from the sale of the stock and the dividends are applicable to payment of the cash legacy as property which is expressly appropriated by the will to such payment within the meaning of section 751 of the Probate Code. It follows, of course, that appellants therefore may object to the ruling of the trial court improperly exonerating the real property from its proportion of the burden for debts and expenses of administration, and unduly and improperly burdening the personalty with these obligations.

■ This disposes of all points urged by the appellants before the trial court and in their briefs filed before the oral argument. At the time of argument the court suggested two other points that had not been raised in the court below or in the briefs. The first of these is whether the community property interest of the wife should be charged with a proportionate share of the debts and expenses of administration. The law is clear that in the absence of an expression of a contrary intent, the entire community property, including the interest of the surviving widow, is subject to the debts and expenses of administration upon the death of the husband. (*Estate of Chanquet,* 184 Cal. 307 [193 Pac. 762]; sec. 202, Prob. Code; see, also, *Estate of Haselbud,* 26 Cal. App. (2d) 375 [79 Pac. (2d) 443]; 11A Cal. Jur., p. 491, sec. 358.) The converse is also true—that is, if the will designates that debts should be paid from the interest of the husband, the wife's share of the community property is exonerated, if the husband's share is sufficient to pay all such debts and expenses. Thus, in *Estate of Chanquet, supra,* the will directed that the wife was to receive her one-half of the community property, and a life estate in the *residuum* of the estate "after paying and discharging all my debts, the cost of my last illness and burial, the cost of administration of my estate . . . ". The Supreme Court reversed the court below, and held that the quoted phrase, when taken in connection with the other provisions of the will, should be interpreted to mean that the testator had designated that debts and expenses of administration must be paid out of the husband's share of the community

property. ■ In the instant case the testator declared, in Paragraph Second of the will, that: "All my property, real and personal . . . is my own separate property." Then in Paragraph Third he stated: "My will is that all my just and lawful debts and funeral charges shall, by my executor hereinafter named, *be paid out of my estate* as soon after my decease as shall to my executor be convenient . . . ". (Italics ours.) The respondent argues that by the italicized portion of this paragraph the testator has definitely expressed his intention that debts and expenses should be paid out of his estate alone. Although the clause is not as clear as the comparable provision in the *Estate of Chanquet, supra,* we agree with this interpretation of this paragraph. In its correct sense the words "my estate" could only refer to that estate or property over which the testator had the right of testamentary control—it could not refer to the wife's share of the community property over which he had no such control. Appellants place some emphasis on Paragraph Second, declaring that: "All my property . . . is my own separate property", and contend that by that paragraph the testator declared that all the property, including the wife's share of the community, was his separate property. We cannot presume that the testator intended by this clause to attempt to will away his wife's share of the community property over which he must be presumed to know he had no power of testamentary disposition. What is probably meant by that clause is that "my property" refers to his share of the community, and that the testator intended to declare that no other person had any interest in his share of the community property. In view of this construction of the terms of the will it must be held that the trial court properly exonerated the wife's share of the community property from liability for debts and expenses of administration.

■ The second point raised at the time of oral argument must also be decided in favor of respondent. Appellants contend that the devise of "all my real property" to the wife, when considered with the bequest of "all the rest of my personal property" to Konstantinos and John is a residuary bequest, and that not only should all expenses of administration and debts of the estate be paid solely from the real property, under section 750 of the Probate Code, but that under section 751 of that code the executor must sell sufficient real property to satisfy the $4,000 bequest of Andreas in full.

These two results would follow if appellants' construction of the will were correct. However, when the will is read as a whole, it seems to us that the devise of "all my real property" was not intended as a residuary devise within the meaning of sections 750 and 751 of the Probate Code. The will shows a studied attempt to treat the personalty and the realty separately. As already pointed out, the testator wanted Andreas to have $4,000 of the personalty and Konstantinos and John to have the balance of such personalty, if any should exist. But, when he came to the real property, he stated that "all my real property" should go to his wife. A residuary bequest is defined in section 161, subdivision 4, of the Probate Code as follows: "A residuary legacy embraces only that which remains after all the bequests of the will are discharged." In other words, the term *"residuum"* implies that something has been taken from the class of property involved, and what remains is the *residuum*. (54 Cor. Jur., p. 715; 69 Cor. Jur., p. 925, sec. 2093.) Thus it has been held that a general residuary clause passes whatever may remain of the testator's estate after the defined devises and legacies have been satisfied. (*Estate of Hall*, 183 Cal. 61 [190 Pac. 364]; 26 Cal. Jur., p. 958, sec. 260.) In the instant case nothing was taken from the real property at all—all of the real property was devised to the wife. There was nothing left after satisfying other devises of real property. The Probate Code itself recognizes the distinction between a true residuary clause and a devise or bequest of "all my property". Section 125 of that code provides that: "A devise . . . of all the testator's real . . . property . . . passes all the real . . . property which he was entitled to dispose of by will at the time of his death . . . ". Section 126 provides that: "A devise of the residue of the testator's real property . . . passes all the real . . . property . . . which he was entitled to devise . . . at the time of his death, not otherwise effectually devised . . . by his will." The general devise mentioned in section 125 must be held to be property "otherwise effectually devised" by the will within the meaning of section 126.

The decree of distribution is reversed and the matter remanded for proceedings not inconsistent with the views herein expressed.

Knight, J., and Ward, J., concurred.